IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**MID VALLEY PIPELINE COMPANY
LLC**                                                  **PLAINTIFF**

V.                          **NO. 4:22-CV-25-DMB-DAS**

**KENNETH RODGERS, in his official
capacity as Commissioner of the Board
of Mississippi Levee Commissioners,
et al.**                     **DEFENDANTS**

**OPINION AND ORDER**

In 1949, the Board of Mississippi Levee Commissioners granted Mid Valley Pipeline Company, LLC, a permit to construct and maintain two pipelines across the levee in Issaquena County, without Mid Valley paying a permit fee. Over fifty years later, the Levee Board asked Mid Valley to relocate the pipelines. Approximately thirteen years after Mid Valley completed that relocation project, the Levee Board advised Mid Valley it would start charging an annual permit fee for Mid Valley's existing pipelines. Mid Valley then sued the Levee Board, its commissioners, and its chief engineer, alleging various federal and state law claims. In response, the defendants asserted state law counterclaims. Mid Valley has moved for summary judgment on its claims and the defendants' counterclaims. The defendants have moved for summary judgment only on Mid Valley's claims. For the reasons explained below, the claims and counterclaims based on state law will be dismissed without prejudice, Mid Valley's motion for summary judgment otherwise will be denied, and the defendants' motion for summary judgment otherwise will be granted in part and denied in part as moot.

**I
Relevant Procedural History**

On February 17, 2022, Mid Valley Pipeline Company, LLC, filed a complaint in the United

States District Court for the Northern District of Mississippi "against the members of the Board of Mississippi Levee Commissioners in their official capacities"[1] seeking "declaratory and injunctive relief … due to the Levee Board's purported revocation and rescindment of [its] existing interstate pipeline permit and attempt to impose and enforce the payment of a new Pipeline Crossing Fee to reinstate the permit." Doc. #1 at 1–2. The defendants filed an answer and counterclaims on March 29, 2022. Doc. #6. Mid Valley answered the counterclaims on April 18, 2022. Doc. #7.

The following day, Mid Valley filed an amended complaint[2] adding as a defendant the Board of Mississippi Levee Commissioners ("Levee Board"). Doc. #8. The amended complaint contains six "Claim[s] for relief:" (1) "Federal Contract Clause Violation," (2) "State Contract Clause Violation," (3) "Section 1983 Claim," (4) "Alternative Claim of Equitable Estoppel," (5) "Alternative Claim for Breach of Contract," and (6) "Claim for Declaratory Judgment." *Id*. at 9–15. On May 4, 2022, the defendants filed an answer and counterclaims for trespass, nuisance, public nuisance, and unjust enrichment. Doc. #11. Mid Valley answered the counterclaims twelve days later. Doc. #12.

On September 14, 2022, Mid Valley filed a motion for "summary judgment in favor of its claims" and "against the Levee Board's counterclaims." Doc. #30 at PageID 201. The motion is fully briefed. Docs. #31, #49, #54.

On October 31, 2022, the defendants filed a motion for summary judgment on Mid Valley's claims.[3] Doc. #57; Doc. #58 at 1. The defendants' motion is fully briefed. Docs. #58, #59, #67.

---

[1] Kenneth Rodgers; David T. Cochran, Jr.; Katherine Crump; Nott Wheeler, Jr.; Roy Nichols; Paul Hollis; and Hank Burdine were sued in their official capacities as commissioners of the Levee Board. Doc. #1 at 1. Peter Nimrod was sued in his official capacity as Chief Engineer of the Levee Board. *Id.*

[2] "A party may amend its pleading once as a matter of course within … 21 days after service of a responsive pleading" "if the pleading is one to which a responsive pleading is required." Fed. R. Civ. P. 15(a)(1)(B).

[3] In violation of Local Rule 7(b)(2)(B), the defendants' motion is six pages long. In the interest of judicial efficiency, the violation is excused in this instance.

2

Pursuant to notice, the Court held oral argument on the cross-motions for summary judgment on July 31, 2023.[4]

## II
## Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The party moving for summary judgment bears the initial burden of 'informing the district court of the basis for its motion.'" *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

A court shall enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, while a dispute about that fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (cleaned up). "A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party." *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014) (citation omitted). "All reasonable inferences must be viewed in the light most favorable to the party opposing summary judgment, and any doubt must be resolved in that party's favor. At the same time, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (citation omitted).

Where, as here, the "parties file cross-motions for summary judgment, [the court] review[s]

---

[4] At oral argument, the parties raised certain matters not reflected in the summary judgment submissions or substantiated by the summary judgment evidence. The Court will decide the summary judgment motions based only on the evidence present in the summary judgment record.

each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *McGlothin v. State Farm Mut. Ins. Co.*, 925 F.3d 741, 745 (5th Cir. 2019) (citation omitted). When "the movant bears the burden of proof at trial, the movant must establish beyond peradventure all of the essential elements of the claim … to warrant judgment in his favor." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020) (citation omitted). If the moving party satisfies his or her initial burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (cleaned up). When the movant would not bear the burden of persuasion at trial, he or she may satisfy the initial summary judgment burden "by pointing out that the record contains no support for the non-moving party's claim." *Wease v. Ocwen Loan Servicing, LLC*, 915 F.3d 987, 997 (5th Cir. 2019) (citation omitted). And when "a defendant properly moves for summary judgment, the non-movant plaintiff must bring forward sufficient evidence to demonstrate that a genuine issue of material fact exists on every element of a claim." *Aguillard v. La. Coll.*, 824 F. App'x 248, 250 (5th Cir. 2020) (citation omitted).

## III
## Factual Background

Mid Valley Pipeline Company, LLC, "is an Ohio limited liability company, qualified to do business in the state of Mississippi." Doc. #8 at 3; Doc. #11 at 3. The Board of Mississippi Levee Commissioners is an entity created by the Mississippi Constitution. Doc. #8 at 3; Doc. #11 at 3. The current Levee Board Commissioners are Kenneth Rodgers; David T. Cochran, Jr.; Katherine Crump; Nott Wheeler, Jr.; Roy Nichols, Paul Hollis; and Hank Burdine. Doc. #8 at 3; Doc. #11 at 3. The Levee Board's current Chief Engineer is Peter Nimrod. Doc. #8 at 3; Doc. #11 at 3.

On September 5, 1949, an agent of "Mid-Valley Pipeline Company" and the then Chief Engineer of "the Board of Mississippi Levee Commissioners" signed a document titled, "Permit –

Mid-Valley Pipeline Company: Pipeline Crossing – Station 6840" ("Permit").  Doc. #30-1 at Page ID 210–11; Doc. #57-1 at PageID 509–11.  The substantive portions of the Permit provide:

> Be It Resolved by the Board of Mississippi Levee Commissioners, hereinafter called "Board", that the Mid-Valley Pipeline Company of St. Louis, Missouri, an Ohio corporation, be granted permission to construct and maintain two (2) twenty inch pipelines over and across the levee at or near station 6840 [in Issaquena County], as shown on the attached plat. Said permission is granted and shall continue only upon the compliance and observance of all of the following conditions, to-wit:
>
> 1. The location and construction of the pipe line shall be subject to the approval of the Chief Engineer of the Board and the maintenance and use thereof shall also be subject to the approval of the Chief Engineer
>
> 2. The Mid Valley Pipeline Company agrees to enlarge the levee where pipe lines cross it to standard grade and section, according to standard levee specifications.
>
> 3. The pipes are to be laid on the surface of the enlarged sections and 400 feet to the landside and 150 feet to the riverside of the centerline of the main levee. The pipes are to be covered with a 2 foot layer of dirt. Side slopes of all earth work are to be 4 to 1, except for roadway on top of levee and at base where a 12 to 1 slope will be built for easy passage of vehicles.
>
> 4. No trash or material of any kind shall be piled or left on the levee right of way.
>
> 5. The Mid-Valley Pipeline Company shall never assert against the Board any claims for damages to the pipe lines constructed on the levee right of way.
>
> 6. If at any time the Board, or its Chief Engineer, shall deem it necessary to raise the levee or any land on which the pipe lines are constructed, by placing additional dirt thereon, it is agreed and understood that the Mid-Valley Pipeline Company will make any necessary changes in the pipe lines and that no claim will be made against the Board for damages by reason thereof to the pipe lines.
>
> 7. Failure to perform any stipulation contained herein imposed upon the Mid-Valley Pipeline Company shall be sufficient to justify the revocation of this permit.
>
> 8. No changes or alterations are to be made in this installation without prior written consent of the Chief Engineer of the Board.
>
> 9. The Mid-Valley Pipeline Company agrees to repair or restore the levee

> or right of way where any damage results from the construction or maintenance of this pipe line.

Doc. #30-1 at PageID 210–11; Doc. #57-1 at PageID 509–10.[5] After executing the Permit, Mid Valley constructed the pipelines contemplated in the Permit. *See* Doc. #8 at 5; Doc. #11 at 5.

On April 21, 2005, approximately fifty-six years after the Permit's execution, Nimrod wrote Mid Valley, "Attn" Mr. Barry Smith," stating that due to a project by the Corps of Engineers, the Levee Board will "request Mid Valley Pipeline to relocate their existing natural gas pipeline at Sta. 6844 of the Mainline MS River Levee to the top of the new levee structure."[6] Doc. #30-3 at PageID 232.

By letter dated November 4, 2006, Charles E. Jones[7] with Sunoco Pipeline, L.P., sent Nimrod a "Job Scope and copies of two drawings, showing the detail of our proposal to replace two existing 20" pipelines crossing the levee." Doc. #30-4 at PageID 233. Jones also sent the job scope and two sets of drawings to the Corps Project Engineer "for his review prior to [Nimrod's] approval for the required permit for this relocation," advising "[w]e will determine the approved site [for the pipes] from a list provided by the Corps." *Id.*

Nimrod responded to Jones' November 4 letter on February 21, 2007, asking Jones to incorporate changes to the plans and send "2 copies of the plans and specifications for our final review before we issue permission to proceed with the work." Doc. #30-5 at PageID 235. Nimrod also

> advised that a Department of the Army Section 10/404 permit may be required prior

---

[5] In their response to Mid Valley's motion, the defendants assert that the document "attached to Mid-Valley's *Complaint*" as the Permit is "incomplete, as it is missing part of paragraph 5 and all of paragraph 6." Doc. #48 at 1; *see* Doc. #8-1. The parties attached identical copies of the Permit to their respective motions. *See* Docs. #30-1, #57-1.

[6] During oral argument, Mid Valley represented that the Army Corps was responsible for requesting the pipelines be moved; however, nothing in the summary judgment record establishes such.

[7] The defendants' summary judgment motion states that Charles Jones was "Mid Valley's main contact for the new pipelines." *See* Doc. #57 at 4.

6

> to performing maintenance on or adjacent to (channels or levees) or other related operations. Plans, which involve the discharge of dredged or fill material … into wetlands or other waters of the United States, should be submitted to the Vicksburg District Regulatory Branch for a determination of permit requirements prior to starting work.

*Id.*

> On February 27, 2007, Nimrod, on behalf of the Levee Board, wrote Jones stating:
>
> The Board has approved your plan for the proposed pipeline crossing relocation on the Mainline Mississippi River Levee at Station 6844+20 by Sunoco Pipeline L.P. This relocation is required … after the substantial completion of … [the] levee enlargement project.
>
> This pipeline relocation will install (2) 20" diameter pipelines to replace the (2) 22" diameter pipelines … that were permitted to Mid-Valley Pipeline Company by the Board of Mississippi Levee Commissioners on September 5, 1949. …
>
> You are hereby authorized to proceed as indicated on your plans and specifications as long as all other Corps of Engineers permits are in place.

Doc. #30-6 at PageID 237.

Sometime in 2007, Mid Valley completed the relocation project. Doc. #48-2 at 2. According to Mid Valley, the relocation project cost over $700,000. Doc. #48 at 2. Mid Valley's pipelines are now located 75' downstream from the original pipelines. Doc. #8 at 9; Doc. #30-1 at PageID 217. No new permit was issued for the changed location. *See* Doc. #57-2 at PageID 512.

In 2008, the Levee Board began "charging an annual … Fee to all *new* interstate pipelines crossing the levee" within the Levee Board's territory. Doc. #30-1 at PageID 214 (emphasis added).

On July 13, 2020, the Levee Board met and decided that to "increase revenue without raising taxes," "the Chief Engineer was authorized to start charging *existing* interstate pipelines a pipeline crossing fee of $2,500 a year per pipeline." Doc. #30-7 at PageID 238–39 (emphasis

7

added).

On October 9, 2020, consistent with its decision regarding existing pipelines, the Levee Board wrote Mid Valley advising that it decided to charge it a fee of "$2,500 per pipeline per year" and "voted to revoke and rescind all existing Permits … for all interstate pipelines … not currently paying an Annual … Fee." Doc. #30-1 at PageID 214. The letter included "a new Permit … that will need to be executed by Mid-Valley" and mailed back to the Levee Board along with a $5,000 check for the 2020 fee. *Id*. The Levee Board sent additional letters to Mid Valley on December 1, 2020, July 1, 2021, and November 30, 2021, asking it to sign and mail the new attached permit along with a check in the relevant amount for the annual fee. Doc. #30-1 at PageID 215–17.

On January 26, 2022, Heath Douglas, legal counsel for the Levee Board, sent a letter to William Smith, Mid Valley's counsel, stating that because "the original two (2) pipelines crossing the levee were removed and two (2) new pipelines were built crossing the levee 75 feet downstream from the original 1949 location … Mid Valley's current pipelines are in place without a permit." Doc. #30-1 at PageID 218.

## IV
## Summary Judgment Motions

Mid Valley seeks summary judgment "in favor of its claims" and "against the Levee Board's counterclaims." Doc. #30 at PageID 201. In its initial brief, Mid Valley addresses its federal Contract Clause claim, § 1983 claims, and declaratory judgment request, as well as the defendants' counterclaims for trespass, private nuisance, public nuisance, and unjust enrichment. Doc. #31 at 7–20. But because Mid Valley fails to discuss its state law contract clause claim or its alternative claims for equitable estoppel and breach of contract[8] and because, as discussed below,

---

[8] The defendants point out that Mid Valley "does not set out in their Motion or Brief what points of law they actually seek Summary Judgment, and what points of law from their Amended Complaint they do not seek summary Judgment." Doc. #49 at 1. The Court will apply summary judgment review only to the claims it can clearly discern

8

the Court declines to exercise supplemental jurisdiction over the state law claims, those claims will not be addressed by the Court in reviewing Mid Valley's summary judgment motion.

The defendants seek summary judgment only on Mid Valley's claims, not on their counterclaims. Doc. #58 at 1. However, their summary judgment motion does not address Mid Valley's state law contract clause claim and its alternative claim for breach of contract.[9] Regardless, these state law claims will not be reached by the Court.

### A. Federal Contract Clause Claim

#### 1. Mid Valley's motion

In its motion for summary judgment, Mid Valley argues that the Levee Board "in purporting to revoke and rescind [its] 1949 permit and demanding payment of a new annual Pipeline Crossing Fee not authorized by the original permit threaten[s] to deprive [it] of its contractual rights" under the Permit pursuant to Article I, Section 10 of the United States Constitution, the Contract Clause. Doc. #31 at 10. The Levee Board responds that Mid Valley's Contract Clause claim "rest[s] on whether there was, in fact, a contract" and "[g]iven there are a multitude of disputed facts, as to whether a contract existed … [Mid Valley's] request for *Summary Judgment* must fail." Doc. #49 at 17. Mid Valley replies that there was in fact a contract, which was substantially impaired by the Levee Board's decision to abrogate it. Doc. #54 at PageID 483–90. So the Court first must determine if a contract exists. *See Powers v. New Orleans City*, No. 13-5993, 2014 WL 1366023, at *5 (E.D. La. April 7, 2014) ("There can be no impairment,

---

in Mid Valley's motion. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, *identifying each claim* or defense … on which summary judgment is sought.") (emphasis added).

[9] The defendants divide their argument into seven sections: "I. If Mid Valley's 'Contract' Argument Is Accepted, All of Their Claims Still Fail as a Matter of Law;" "II. The 1949 Permit Is a Permit, Not a 'Contract;'" "III. Mid-Valley's Federal Contract Clause Claims;" "IV. Mid-Valley's Claims for Damages under 42 U.S.C. Section 1983;" "V. Equitable Estoppel;" "VI. Declaratory Judgment Re Perpetual Easement;" "VII. Mid Valley's New Claim for Prescriptive Easement." Doc. #58 at 9, 10, 16, 19, 20, 22, 23.

unconstitutional or otherwise, of nonexistent contractual rights."), *aff'd*, 783 F.3d 570 (5th Cir. 2015); *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 504 (1987) ("[W]e begin by identifying the precise contractual right that has been impaired ….").

Mid Valley argues a contract exists here based on six Mississippi law elements: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation."[10] Doc. #31 at 11–12 (citing *GGNSC Batesville, LLC v. Johnson*, 109 So. 3d 562, 565 (Miss. 2013)). The defendants do not disagree with the elements necessary for contract formation. *See* Doc. #49 at 12 (citing *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 734 (Miss. 2019), and *GGNSC Batesville, LLC*, 109 So. 3d at 565). And they do not appear to challenge the existence of elements 1,[11] 3,[12] and 4.[13] *See* Doc. #49 at 12 (citing *Gulf Coast Hospice LLC*, 273 So. 3d at 734).

Under Mississippi law, if any element necessary to form a contract is missing, no contract exists. *Lanier v. State*, 635 So. 2d 813, 826 (Miss. 1994); *see Busching v. Griffin*, 465 So.

---

[10] "[I]t is, of course, a basic principle of the law of contracts that a contract is not formed between the parties absent the essential elements of offer, acceptance, and consideration." *Ross v. Stewart*, 227 So. 3d 406, 412 (Miss. Ct. App. 2017) (citation omitted). Mid Valley never argues that there was an offer and acceptance between it and the Levee Board but in its reply, acknowledges a contract "must contain an offer, acceptance, and consideration." *See* Doc. #54 at PageID 485 (citing *In re Estate of Davis*, 832 So.2d 534, 537 (Miss. Ct. App. 2001)). The Levee Board never points out Mid Valley's omission of offer and acceptance.

[11] Mid Valley maintains, and the defendants do not contest, that there are two parties to the Permit. Doc. #31 at 11; *see generally* Doc. #49.

[12] A contract is sufficiently definite "if it contains matter which will enable the court under proper rules of construction to ascertain its terms." *Leach v. Tingle*, 586 So. 2d 799, 802 (Miss. 1991). Mid Valley argues "[t]he crossing agreement is [a] definite … grant of permission to cross a portion of a levee, conditioned on [its] 'compliance and observance' of several conditions" and is "revocable only upon [its] failure … 'to perform any stipulation contained herein.'" Doc. #31 at 11. It is not entirely clear if the defendants contest the definiteness element. Without reference to any argument by Mid Valley, they correctly submit "the permit states that the maintenance and use of the pipeline is subject to the approval of the Chief Engineer of the Levee Board." Doc. #49 at 14; *see* Doc. #30-1 at PageID 210–11.

[13] Mid Valley states "[i]t is beyond reasonable dispute that both Mid Valley and the Levee Board had legal capacity to enter into the agreement." Doc. #31 at 12. The defendants do not disagree. *See generally* Doc. #49 at 12–15.

2d 1037, 1040 (Miss. 1985) (if any essential terms are left unresolved, no contract exists). The Court need not review all the disputed elements[14] because, as explained below, it concludes consideration is lacking.

Mid Valley argues there was consideration for the Permit because it undertook "multiple obligations" under the Permit, including "agreeing to move its pipelines at the Levee Board's request" and "[forbearing] several rights" such as "agreeing not to seek damages from the Levee Board … in return for the right to construct and operate its pipelines across the levee." Doc. #31 at 11. The defendants respond that these were simply conditions for a permit, emphasizing that the Permit simply granted Mid Valley permission—like a drivers' license or building permit.[15] Doc. #49 at 12–14. The defendants further point out that the Levee Board never received any money for the Permit. *Id.* at 12.

It is a basic principle of contract law that "[w]here no consideration exists, no contract can be formed." *See Gibson v. Shoemake*, 282 So. 3d 458, 465 n.2 (Miss. Ct. App. 2019). In its motion for summary judgment, Mid Valley cites one case on the issue of consideration to define "consideration for a promise [as] (a) an act other than a promise, or (b) a forbearance, or (c) the

---

[14] Mid Valley argues "there is no legal prohibition barring formation of the contract." Doc. #31 at 12. The defendants argue that if the Permit is a contract, "it is in violation of Section 95 of the 1890 Mississippi Constitution, as it constitutes a lease of State controlled land for lack of, or grossly inadequate, consideration." Doc. #49 at 21. Mid Valley replies that nothing in Mississippi case law indicates that a donation can exist where there are burdensome obligations, such as relocating a pipeline. Doc. #54 at 484. Section 95 of the 1890 Mississippi Constitution provides that "[l]ands belonging to, or under the control of the state, shall never be donated directly or indirectly, to private corporations or individuals." Miss. Const. art. 4, § 95. This provision seems irrelevant to the present case because the Permit never granted the land involved to Mid Valley. *See* Doc. #30-1 at PageID 210–11. The defendants did not identify any other law prohibiting contract formation.

[15] The defendants also argue that "even if Mid-Valley's obligations under the permit did constitute consideration, such consideration is grossly inadequate under Section 95 of the Mississippi Constitution of 1890." Doc. #49 at 13. Section 95 provides that "[l]ands belonging to, or under the control of the State, shall never be donated directly or indirectly, to private corporations or individuals." Miss. Const. art. 4, § 95. The defendants' argument is unfounded because they have not conceded the land was donated to Mid Valley. And during oral argument, the defendants' counsel admitted that the Levee Board does not own the land involved. So the Levee Board could not grant the land to Mid Valley directly or indirectly.

creation, modification or destruction of a legal relation, or (d) a return promise, bargained for and given in exchange for the promise." Doc. #31 at 11 (quoting *City of Starkville v. 4-Cty. Elec. Power Ass'n.*, 819 So. 2d 1216, 1220 (Miss. 2002) (cleaned up)). However, Mid Valley does not identify any promise the Levee Board made in exchange for Mid Valley's obligations under the Permit. *See generally id.* Nor does Mid Valley show the Levee Board received anything in exchange for Mid Valley's obligations under the Permit.[16] *See In re Estate of Davis*, 42 So. 3d 534, 527 (Miss. Ct. App. 2001) ("[g]enerally, an enforceable contract consists of an offer, an acceptance … and consideration" and forbearance from the right to sue could be consideration when "both parties gave adequate consideration to forego further litigation"). Given that Mid Valley also has not identified anything the Levee Board received in exchange for the forbearance basis it argues, Mid Valley's forbearance argument is rejected. *See Union Oil Co. v. Wood*, 297 So. 2d 819, 820 (Miss. 1974) ("[B]efore forbearance may be asserted as consideration for the basis of a claim, there must be a promise to do something on the part of the opposite party before recovery can be had for the forbearance."). Consequently, Mid Valley fails to show consideration, a necessary element for contract formation, and the Court concludes the Permit is not a contract.[17] *See Gibson*, 282 So. 3d at 465 n.2; *Lanier*, 635 So. 2d at 826; *Powers*, 2014 WL 1366023, at *5. In the absence of a contract, Mid Valley's Contract Clause claim fails.[18] *Powers*, 2014 WL

---

[16] During oral argument, the Court asked Mid Valley what the Levee Board gained from the Permit. Mid Valley's counsel responded that the Levee Board received the promise Mid Valley would move its pipelines if ever requested. Mid Valley's counsel also argued that it does not normally forbear the right to sue in its permits but nothing in the summary judgment record supports this claim. And the precise language of the Permit seems inconsistent with Mid Valley's contention that it required it to move the pipelines in any circumstance at the Levee Board's request.

[17] "Courts have consistently held that neither a permit nor a license are contracts." *Bd. of Comm'rs v. Tenn. Gas Pipeline Co., LLC*, 88 F. Supp. 3d 615, 645 (E.D. La. 2015); *see Lichterman v. Pickwick Pines Marina, Inc*., No. 1:07-cv-256, 2010 WL 1709980, at *2 (N.D. Miss. Apr. 23, 2010) (a license is "[a] permit, granted by an appropriate governmental body, generally for a consideration, to a person, firm or corporation to pursue some occupation or to carry on some business subject to regulation under the police power. A license is not a contract between the [granting governmental body] and the licensee, but is a mere personal permit.").

[18] Even if a contract existed, Mid Valley fails to cite a specific enactment by the Levee Board that violates the Contract Clause. When asked about this during oral argument, Mid Valley's counsel said the Levee Board's resolution to

1366023, at *5; *see Jackson Mun. Airport Auth. v. Bryant*, No. 3:16-cv-246, 2017 WL 3175915, *18-19 (plaintiffs could not "sue for impairment of a contract where no contract exists"). Accordingly, Mid Valley's motion for summary judgment on its federal Contract Clause claim is denied.

### 2. Defendants' motion

The defendants argue that Mid Valley's federal Contract Clause claim fails because (1) the Permit lacks consideration and mutual assent, (2) a contract does not exist because the Mississippi Constitution prohibits contracts "where the State receives little to no consideration for property in which it has an interest;" (3) even if the Court determined that there is a contract, the Permit was "issued in 1949 for pipelines which no longer exist;" (4) the Permit "gives the Levee Board Chief Engineer exclusive control over whether to allow 'use' of the pipelines, which he has stated, he no longer approves;" (5) even if the Court decided there was a contract, it was revoked; and (6) Mid Valley cannot show that "the imposition of [a] new permit, with a $5,000 annual crossing fee" (a) would be "a substantial impairment to them;" (b) does "not have a legitimate and important public purpose;" and (c) "was not reasonable and appropriate in light of that purpose."[19]  Doc. #58 at 11, 12–13, 14 16, 17–19.

Mid Valley responds that the "Levee Board's arguments about the existence of a contract … fail for the same reasons put forth by [it] … in its summary judgment brief." Doc. #59 at PageID 575.  Regarding a substantial impairment, Mid Valley argues "the Levee Board has completely revoked the contract at issue" and "[t]here is no 'impairment' of a contract more

---

revoke the Permit serves as the enactment.  The Court does not agree.  Contrary to the cases it cites, Mid Valley failed to cite a case where a resolution—rather than a state statute, state constitutional provision, or municipal ordinance—was held sufficient to find a Contract Clause violation.

[19] Most of the arguments in the briefing on the defendants' motion for summary judgment are duplicative of those in Mid Valley's motion for summary judgment.

13

'substantial' than its complete revocation." *Id*. As to legitimate public purpose, Mid Valley submits that the purpose identified by the Levee Board, "money to fund its operations—has been rejected specifically by the United States Supreme Court as a valid basis for contractual impairment." *Id.* at PageID 576 (citing *U.S. Tr. Co. of N.Y. v. N.J.*, 431 U.S. 1, 26 (1977)).

The defendants reply that "Mid Valley wholly failed to rebut all the contractual arguments contained within the Levee Board's Motion for Summary Judgment, thus any constitutional contracts clause arguments made herein by Mid-Valley, are unrebutted and should be dismissed." Doc. #67 at 7.

The Court concluded above that the Permit is not a contract because it lacks consideration for the reasons explained. Accordingly, Mid Valley's federal Contract Clause claim fails as a matter of law and the defendants' motion for summary judgment is granted as to such claim.

### B. Section 1983 Claim

#### 1. Mid Valley's motion

In its amended complaint, Mid Valley seeks "injunctive relief under 42 U.S.C. § 1983" and an "award of its reasonable attorney fees under 42 U.S.C. § 1988" based on allegations that the defendants both "substantially impaired its contractual rights in violation of the Constitution" and took "property owned by [it] without just compensation or due process in violation of both the Fifth and Fourteenth amendments." Doc. #8 at 12. However, in its motion for summary judgment, Mid Valley omits reference to the Takings Clause claim and limits its focus to the Contract Clause claim. *See* Doc. #30 at PageID 202. In response to Mid Valley's motion, the defendants reassert all previous contractual defenses, implying they cannot be found liable under § 1983 or § 1988 because Mid Valley's Contract Clause claim fails as a matter of law. Doc. #49 at 23. Mid Valley does not reply directly to the § 1983 issue but rather argues in more detail the existence of a

14

contract. *See* Doc. #54 at PageID 488–90.

"Section 1983 liability results when a person acting under color of state law, deprives another of rights secured by the Constitution or federal law." *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 956 (5th Cir. 2020) (cleaned up); 42 U.S.C. § 1983. If a party prevails in bringing a § 1983 claim, "the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs. 42 U.S.C. § 1988(b).

Because Mid Valley did not prevail on its federal Contract Clause claim and because it did not address the Takings Clause portion of its § 1983 claim, its summary judgment motion as to its § 1983 claim (including its associated request for attorney's fees under § 1988) is denied.

### 2. Defendants' motion

To the extent that, in seeking summary judgment on the § 1983 claims, "[t]he Levee Board reasserts all contractual and constitutional defenses," *see* Doc. #58 at 19, the Court construes such to mean it challenges the § 1983 claim as to the federal Contract Clause and as to the Takings Clause. With respect to the federal Contract Clause portion, the Court has already concluded that there is no contract to support such claim so the defendants' summary judgment motion is granted to that extent.

Regarding the Takings Clause portion of Mid Valley's § 1983 claim, the defendants argue in their summary judgment motion that Mid Valley cannot prevail because it does not have a property interest in the land.[20] Doc. #58 at 19. Mid Valley wholly fails to respond to the defendants' request for summary judgment on the § 1983 claim. *See generally* Docs. #59, #60.

"A plaintiff abandons claims when it fails to address the claims or oppose a motion

---

[20] The defendants also "reassert[] all contractual and constitutional defenses[,]" implying that the Court cannot find them liable under either § 1983 or § 1988 because Mid Valley cannot prevail on its federal Contract Clause claim. *See* Doc. #58 at 19.

15

challenging those claims." *Terry Black's Barbecue, LLC v. State Automobile Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022); *see Bedford v. Tex. Dep't of Transp.*, 810 F. App'x 264, 268 (5th Cir. 2020). Because Mid Valley failed to respond to the defendants' request for summary judgment on the § 1983 claim, made no argument as to its Takings Clause portion of such claim, and did not prevail on its federal Contract Clause claim, the § 1983 claims are deemed abandoned and will be dismissed.

### C. Declaratory Judgment "Claim"[21]

#### 1. Mid Valley's motion

The introductory paragraph of Mid Valley's amended complaint states that Mid Valley "seeks a declaratory judgment that the Levee Board's actions violate the United States and Mississippi Constitutions." Doc. #8 at 2. In the section of the amended complaint alleging Mid Valley's "Claim for Declaratory Judgment," Mid Valley requests the Court "enter a final judgment recognizing that each pipeline permit conveyed to [it] by the Levee Board was an express grant to [it] of a *perpetual easement* over and across Levee Board property." *Id*. at 15 (emphasis added). However, in its motion for summary judgment, Mid Valley does not directly request a declaratory judgment for a perpetual easement and instead requests a declaration that its pipelines are authorized by the Permit.[22] *See* Doc. #30 at PageID 202; *see also* Doc. #31 at 7–8. And though Mid Valley cites case law concerning easements, *see* Doc. #31 at 8, it fails to address the law on

---

[21] Although Mid Valley's amended complaint labels this as a "Claim for Declaratory Judgment," the Federal Rules treat a declaratory judgment as a remedy. *See* Fed. R. Civ. P. 57.

[22] Alternatively, "Mid Valley requests a declaratory judgment that it has obtained prescriptive easements over the Levee Board's property coinciding with the route of its current pipeline crossings." Doc. #31 at 7–8. The defendants respond that the Court cannot grant summary judgment on the claim for prescriptive easement because Mid Valley did not assert the claim in its amended complaint. Doc. #48 at 6; *see also* Doc. #8. Federal Rule of Civil Procedure 8(a) requires the plaintiff to give the defendant adequate notice of the claims and the grounds upon which they are based. *See, e.g.*, *Slaughter v. Torres*, 592 F. Supp. 3d 515, 521 (M.D. La. 2022). Accordingly, the Court declines to entertain the alternative claim for prescriptive easement.

declaratory judgments. *See id.* at 7–9. Though the defendants acknowledge Mid Valley's request for a declaratory judgment, they do not clearly rebut it and instead argue contract law.[23] *See generally* Doc. #49. Likewise, Mid Valley does not further address the declaratory judgment request in its reply. *See generally* Doc. #54.

The Court has far-reaching discretion for issuing declaratory judgments. *See* 28 U.S.C. § 2201. If jurisdiction is proper, "any court of the United States, … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Id.*

Mid Valley's motion for summary judgment does not expressly request a declaratory judgment based on any of its federal claims. *See* Doc. #30 at PageID 202; Doc. #31 at 7. To the extent Mid Valley's motion for summary judgment requests a declaratory judgment based on the federal claims it alleges in the amended complaint, it is denied for the same reasons the Court denied its federal claims above. To the extent Mid Valley's motion for summary judgment requests a declaratory judgment that the Permit granted it a perpetual easement (or on any other state law ground), the Court, as discussed below, declines to decide that state law issue.[24]

---

[23] This omission is likely because of the confusing nature of Mid Valley's section pertaining to declaratory judgment. *See* Doc. #31 at 7–10. Mid Valley appears to mistakenly caption its request for declaratory relief: "I. Mid Valley's pipeline crossing are authorized by a *binding contract* between Mid Valley and the Levee Board." Doc. #31 at 7 (emphasis added). However, no further mention of the Permit being a "binding contract" is in this section. *See generally* Doc. #31 at 7–9. The defendants take such as a request for a declaration that there is a binding contract. *See generally* Doc. #49. However, if Mid Valley actually seeks that, such relief would be contrary to Mississippi law because "contracts for an indefinite period are terminable at will by either party upon giving reasonable notice to the other party." *Denbury Onshore, LLC. v. Precision Welding, Inc.*, 98 So. 3d 449, 454 (Miss. 2012) (citations and quotation marks removed).

[24] Even if the Court addressed the request, it likely would be denied. The Court initially would have to determine if the Permit granted a perpetual easement, "first [by examining] the language contained in the 'four corners' of the instrument." *Warren v. Derivaux*, 996 So. 2d 729, 735 (Miss. 2008) (citations omitted). "In reviewing the document, the court should construe the language in a manner which makes sense to an intelligent layman familiar only with the basics of English language." *Id.* (quotation marks and citations omitted). Because easements, deeds, and other written instruments are subject to the same rules of interpretation in Mississippi, the contract interpretation step analysis previously provided in this memorandum also applies here. *See Hobgood v. Koch Pipeline Se., Inc.*, 769 So. 2d 838, 843 (Miss. Ct. App. 2000). The Permit clearly states that the "maintenance and use [of the pipelines] shall … be subject to the approval of the Chief Engineer." Doc. #30-1 at PageID 210. Reserving the right to revoke use of the

### 2. Defendants' motion

The defendants seek summary judgment on Mid Valley's request for declaratory judgment on the argument that because the Levee Board does not own the land involved, the Court is barred from granting a perpetual easement.[25] Doc. #58 at 22–23. Mid Valley does not respond to the argument. *See generally* Docs. #59, #60. While the Court has broad discretion to issue a declaratory judgment[26] and Mid Valley's failure to respond could be viewed as an abandonment of its request for a declaratory judgment for a perpetual easement,[27] the Court will not review the defendants' argument to the extent it implicates a state law matter.

### D. State Law Claims

"As a general rule, a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Alphonse v. Arch Bay Holdings, LLC*, 618 F. App'x 765, 769 (5th Cir. 2015) (cleaned up); *see Spell v. Edwards*, No. 22-30075, 2023 WL 2110889, at *6 (5th Cir. Feb. 17, 2023). The Court declines to exercise supplemental jurisdiction over the claims based on state law here since all federal claims have been excised from this case.[28] 28 U.S.C. § 1367(c). Accordingly, Mid Valley's claims based on state law and the defendants' state law counterclaims will be dismissed without prejudice.

---

pipelines contradicts the concept of a perpetual easement.

[25] The defendants use their own motion to oppose the cases Mid Valley cited in its motion for summary judgment. *See* Doc. #58 at 22. Because the defendants failed to previously argue against Mid Valley's request for declaratory judgment, the Court will ignore this delayed attempt to respond.

[26] *See* 28 U.S.C. § 2201.

[27] "A plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims." *Terry Black's Barbecue, LLC*, 22 F.4th at 459; *see also Bedford*, 810 F. App'x at 268. Regardless, the right to revoke the Permit contradicts the notion that it granted a perpetual easement.

[28] The amended complaint alleges jurisdiction "pursuant to 28 U.S.C. § 1331" and that "[t]his Court has supplemental jurisdiction over [Mid Valley's] state law claims pursuant to 28 U.S.C. § 1367." Doc. #8 at 2–3. Though the amended complaint alleges "[t]his Court also has jurisdiction … pursuant to 28 U.S.C. § 1332," *id*. at 2, diversity jurisdiction is not properly alleged because the amended complaint does not sufficiently allege Mid Valley's citizenship since it alleges Mid Valley "is an Ohio limited liability company, qualified to do business in the State of Mississippi." *Id*. "[T]he citizenship of an LLC is determined by the citizenship of all of its members. So to establish diversity

V
Conclusion

Based on the conclusions above:

1. Mid Valley's claims based on state law and the defendants' state law counterclaims are **DISMISSED without prejudice**.

2. Mid Valley's motion for summary judgment [30] is **DENIED** as to the federal Contract Clause claim, the § 1983 claims, and to the extent it seeks a declaratory judgment based on its federal claims.

3. The defendants' motion for summary judgment [57] is **GRANTED in Part and DENIED in Part as moot**. It is GRANTED as to the federal Contract Clause claim and the § 1983 claim based on the federal Contract Clause claim. It is DENIED as moot as to the § 1983 claim based on the Takings Clause and as to Mid Valley's state law claims.

**SO ORDERED**, this 29th day of September, 2023.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

jurisdiction, a party must specifically allege the citizenship of every member of a[n] LLC." *MidCap Media Fin., LLC v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019) (cleaned up). Mid Valley's corporate disclosure statement (which the Court should not be held to review to determine jurisdiction) does not assist this jurisdictional deficiency. It states that "Sun Pipe Line Company, LLC is a holding company that owns 100% membership interest in Mid Valley;" "Sun Pipe Line Company, LLC is owned by ET CC Holdings, LLC;" and "ET CC Holdings, LLC is a holding company wholly owned by Energy Transfer, LP." Doc. #4 at 2. Ownership of an interest does not necessarily equate to membership. *See, e.g.*, Jon Morgan, *Who Owns an LLC?*, Venture Smarter (Sept. 16, 2023), https://venturesmarter.com/who-owns-an-llc/ ("An LLC can be owned by an individual, several members, a corporation, or legal entities."). And each partner of Energy Transfer, LP, is not identified along with its citizenship, diversity jurisdiction is not properly alleged. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) ("The citizenship of a limited partnership is based upon the citizenship of each of its partners.").